UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| CHRIS AMAEFUNA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:22-CV-00211-DCLC-SKL |
| | ) |
| MIKE GAMSBY and MICRONICS | ) |
| ENGINEERING FILTRATION GROUP, | ) |
| | ) |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Chris Amaefuna ("Amaefuna") sued Defendants for violations of Title II under the Civil Rights Act of 1964 ("Title II") and for discrimination under 42 U.S.C. § 1981 when they refused to sell him filter cloths [*See* Doc. 9, ¶¶ 9, 11]. On Defendants' motion, the Court dismissed Amaefuna's Title II claim for lack of jurisdiction, leaving only his § 1981 claim [Doc. 20, pgs. 4–5; *see* Doc. 12]. Defendants have now moved for summary judgment on the § 1981 claim [Doc. 24]. Defendants' motion is fully briefed, and this matter is now ripe for resolution. For the reasons stated below, Defendants' motion [Doc. 24] is **GRANTED**. The Amended Complaint [Doc. 9] is **DISMISSED WITH PREJUDICE**.[1]

**I.    BACKGROUND**

In April 2022, Rex Nwanne ("Nwanne") of Bonn Industries Limited ("Bonn"), a Nigerian manufacturer of glycerin and soap noodles, [*see* Doc. 9, ¶ 1], sought to purchase filtration materials from Micronics [Doc. 25-2, pg. 2, ¶ 8]. Although Bonn was a Nigerian company, Nwanne

---

[1] Amaefuna requests summary judgment in his Opposition to Defendants' motion [Doc. 28, pg. 3]. Because the dispositive motion deadline passed on December 11, 2023, this request is untimely [*see* Doc. 19, pg. 1].

1

indicated that the materials could be delivered to a Texas address [*See* Doc. 25-2, pg. 2, ¶ 8]. In May 2022, Micronics agreed to provide the filtration material [*see* Doc. 25-2, pg. 60]. But when Micronics requested a shipping address, Nwanne provided an address in New Jersey, not Texas as he had previously stated [*See* Doc. 25-2, pgs. 58–59].

Defendant Gamsby checked the New Jersey address but could not verify it [Doc. 25-2, pg. 2, ¶ 10]. In an email to Nwanne, Gamsby stated, "I am trying to verify this address but the phone# associated with it is disconnected. Also you originally told Ash that your US based forwarder was in TX, but now you're using a NJ address. Can you please explain the discrepancy" [Doc. 25-2, pg. 57]. Nwanne responded that his home address was in Texas, but that "we have done business with the company Motorways Corps [sic] [("Motorways")] in the past" [Doc. 25-2, pg. 57]. Nwanne explained he was providing a New Jersey address because Motorways had a warehouse and had agreed to receive and pay for the materials on Bonn's behalf [Doc. 25-2, pg. 57]. Nonetheless, Gamsby explained in an email to colleague Fred Byrd that he had unsuccessfully tried calling the company after "googling" it and that "this entire thing is throwing off every alarm bell my brain has" [Doc. 25-2, pg. 56].

In June 2022, Amaefuna contacted Defendants, claiming to be acting on Bonn's behalf [Doc. 25-2, pg. 2, ¶ 11]. Micronics required a completed new customer form before it would issue a quote for the materials [*see* Doc. 25-2, pg. 2, ¶ 12]. Gamsby forwarded the form to Amaefuna "so we can verify the existence of your company and our ability to do business with it" [Doc. 25-2, pg. 81]. Amaefuna filled out the form, providing Motorways' address, signing as a "managing partner," and listing three credit references [Doc. 25-2, pgs. 85–86]. Gamsby sent an email to a Jomayra Cruz attaching the form and stating that Motorways was "going to be PIA (Certified Check Only) but I still feel like we should verify their references just in case" [Doc. 25-2, pg. 83].

2

Amaefuna's references did not respond to Micronics' inquiries [Doc. 25-2, pg. 2, ¶ 14]. In a July 15, 2022 email to Amaefuna, Gamsby explained Micronics' accounting department had informed him that Amaefuna's references had not responded to Micronics' inquiries and that internet searches of Amaefuna's business showed that his company was out of business at the address he provided [Doc. 25-2, pg. 88]. Gamsby informed Amaefuna that Micronics would decline to complete the sale [Doc. 25-2, pg. 88]. This lawsuit followed.

## II. LEGAL STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In ruling on a motion for summary judgment, the Court must generally view the facts contained in the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "come forward with significant probative evidence showing that a genuine issue exists for trial." *McKinley v. Bowlen*, 8 F. App'x 488, 491 (6th Cir. 2001). A mere scintilla of evidence is not enough; the Court must determine whether a fair-minded jury could return a verdict in favor of the nonmoving party based on the record. *Id*.

At the outset, Amaefuna relies heavily on allegations from the Amended Complaint, which the Court cited in denying Defendants' Motion to Dismiss [Doc. 28, pgs. 1–2; *see also* Doc. 29, pg. 1]. However, a party opposing summary judgment may not "rest on his pleadings but must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin Coll.*, 440 F.3d 350, 357 (6th Cir. 2006) (citing *Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986); *Celotex,* 477 U.S. at 324; and *Hall v. Tollett,* 128 F.3d 418, 421–22 (6th Cir. 1997)). Amaefuna must "present significant probative evidence in support of [his] complaint . . . ." *Moore v. Philip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993) (citing *Anderson*, 477 U.S. at 249–50). To do so, he must point to "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials . . . ." Fed.R.Civ.P. 56(c).

### III. ANALYSIS

#### A. Standing for § 1981 claim

Defendants begin with arguing that Amaefuna lacks standing to assert a claim under § 1981. Defendants contend that Amaefuna "does not allege that he attempted to enter into any contractual relationship with Defendants." [Doc. 25, ¶ 30]. Defendants claim that Amaefuna only had a contractual relationship with Bonn and thus no "personal stake in the outcome of the controversy" [*Id.*, ¶ 29].

To satisfy this requirement, a plaintiff must have, or would have, rights under an existing or proposed contract that the plaintiff intends to enforce. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 479–80 (2006) (citations omitted). "Section 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's." *Id.* at 480. In this case, Amaefuna claimed in his declaration that *he* "desired to purchase merchandise" from Defendants [Doc. 28, pg. 5]. Contrary to Defendants' argument, Amaefuna has placed this issue in dispute. Thus, he has established sufficient facts to give him standing under § 1981 at this stage.

4

### B.     Whether Plaintiff has alleged a claim under § 1981

Defendants next argue that Amaefuna has not *alleged* any viable claim under § 1981 [Doc. 25, ¶¶ 32–36]. But the Court has already addressed this issue in its Memorandum Opinion and Order denying Defendants' motion to dismiss [Doc. 20, pgs. 5–8]. Amaefuna has *alleged* a claim under § 1981.

### C.     Whether Plaintiff has produced evidence to support his § 1981 claim

Finally, Defendants claim Amaefuna has not produced any evidence to support his claim under § 1981 [Doc. 25, ¶¶ 37–42]. Section 1981 "prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors," including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Amini*, 440 F.3d at 358 (citations omitted). To succeed on a § 1981 claim, the plaintiff must show: "(1) he belongs to an identifiable class of persons who are subject to discrimination based on their race; (2) the defendant intended to discriminate against him on the basis of race; and (3) the defendant's discriminatory conduct abridged a right enumerated in section 1981(a)." *Id.* (citing *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 871–72 (6th Cir. 2001)). A plaintiff must "initially plead and ultimately prove that, *but for* race, [they] would not have suffered the loss of a legally protected right." *Comcast Corp. v. National Ass'n of African American-Owned Media*, ––– U.S. –––, 140 S. Ct. 1009, 1019, 206 L.Ed.2d 356 (2020) (emphasis added). "[I]ntentional discrimination[ ] can be shown through either direct evidence of discrimination or circumstantial evidence 'which would support an inference of discrimination.'" *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 755 (6th Cir. 2023) (quoting *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000)).

Proving discriminatory intent may be accomplished with "direct evidence or inferentially." *Amini*, 440 F.3d at 358 (citation omitted). "When a claimant seeks to prove intentional discrimination inferentially in a section 1981 case, federal courts follow the burden-shifting framework that the Supreme Court has prescribed for analogous civil rights cases described in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) . . . ." *Id.*; *see also Inner City Contracting*, 87 F.4th at 755. "Under that framework, the plaintiff must present a *prima facie* case, at which point the defendant must come forward with a legitimate, non-discriminatory reason for its action. If the defendant can respond with such a reason . . . , the plaintiff has the burden of offering evidence that the defendant's justification is a pretext that masks its true discriminatory intent." *Amini*, 440 F.3d at 359–60 (citing *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003)). But the burden of persuasion "remains at all times with the plaintiff." *Id.* at 360 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Defendants focus their argument on showing that they had a legitimate, non-discriminatory reason for not completing the sale to Amaefuna [Doc. 25, ¶¶ 20, 40]. This, of course, presumes that Amaefuna has satisfied his initial burden of showing a *prima facie* case of discrimination. The Court accepts this presumption. They contend the evidence shows they refused to sell filter materials because Amaefuna was an "unverifiable agent" with an "unverifiable address" [Doc. 25, ¶ 20]. They argue Amaefuna failed to document his right to complete the transaction and that both Amaefuna and Bonn failed to provide a reliable shipping destination [Doc. 25, ¶ 22(g)]. They note that at one point the material would be shipped to Texas and then to an unverified address in New Jersey [Doc. 25, ¶¶ 3–4; *see* Doc. 25-2, pgs. 57–58]. Refusing to complete the sale because of Amaefuna's providing unverifiable shipping addresses is a legitimate, non-discriminatory reason for their refusal to make the sale.

At this point, Amaefuna must show that Defendants' reasons for declining the sale are pretext for racial discrimination. *See Amini*, 440 F.3d at 359–60. "A plaintiff can demonstrate pretext 'by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.'" *Id.* at 360 (quoting *Kroger Co.*, 319 F.3d at 866). Amaefuna has failed to make any showing in this regard. Amaefuna only reiterates his claim that Defendants discriminated against him [*See* Doc. 28, pg. 1]. He does not address their reasons for not making the sale or otherwise claim that those reasons were a pretext for discrimination [*See* Doc. 28, pgs. 1–6]. "[C]onclusory allegations and subjective beliefs . . . are wholly insufficient evidence to establish a claim of discrimination as a matter of law." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992) (citing *O'Shea v. Detroit News*, 887 F.2d 683 (6th Cir. 1989).

Amaefuna further contends that Defendants made him apply for credit despite his willingness to pay in certified check or bank draft [Doc. 28, pg. 5, ¶ 3]. But that does not address the reasons Defendants gave for declining the sale, including whether they were shipping the product to a legitimate agent for Bonn at the right shipping address. Although Nwanne initially indicated that he would need the product shipped to Texas, when prompted for a specific address, he provided a New Jersey address [Doc. 25-2, pg. 2, ¶¶ 8, 10; *id.* pgs. 57–59, 64]. When Gamsby attempted to verify the New Jersey address, he was unsuccessful because the phone number associated with it was disconnected [Doc. 25-2, pg. 57]. He stated in an email to Amaefuna that he needed a new customer application completed because Micronics needed to "verify the existence of your company and our ability to do business with it" [Doc. 25-2, pg. 89]. Acknowledging that Motorways would be paying in certified check, Gamsby "still fe[lt] like we should verify their references just in case" [Doc. 25-2, pg. 83]. To top it off, Amaefuna's

7

references did not respond to Micronics' inquiries [Doc. 25-2, pg. 2, ¶ 14; *id.*, pg. 88]. In sum, because Amaefuna fails to show that the reasons Defendants gave for not completing the sale were pretextual, his § 1981 claim necessarily fails.

## IV. CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment [Doc. 24] is **GRANTED**. The Amended Complaint [Doc. 9] is **DISMISSED WITH PREJUDICE**.

A separate judgment shall enter.

**SO ORDERED**:

s/ Clifton L. Corker<br>
United States District Judge